# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:17-025 (WOB-CJS)

SATISH DOSHI, Individually
And on behalf of all other
Persons similarly situated                              PLAINTIFFS

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

GENERAL CABLE, ET AL                                    DEFENDANTS


This is a securities class action brought on behalf of all persons who purchased General Cable securities between February 23, 2012 and February 10, 2016.

This matter is currently before the Court on competing motions for appointment as lead plaintiff. One is by The Employees Retirement System of the Puerto Rico Electric Power Authority ("PREPA") (Doc. 19), and the other is by William Edward Long, as Trustee of the UA 09-21-2001 William Edward Long & Bonnie Diane Long Living Trust ("the Long Trust") (Doc. 22).[1]

The Court has reviewed this matter and concludes that oral argument is not necessary.[2]

---

[1] A third motion by plaintiffs Erick Grimm and Satish Doshi (Doc. 20) is moot, as they have conceded that they do not assert the largest financial interest in the relief being sought by the Class. (Doc. 41).

[2] The PSLRA does not require courts to hold hearings on lead plaintiff motions. *Norfolk Cnty. Ret. Sys. v. Comty. Health*

### *Factual and Procedural Background*

General Cable is manufacturer and distributor of fiber optic wire and cable products for use in the energy, industrial, construction, specialty and communications markets. (Compl. ¶ 21).

Plaintiffs allege that, beginning on February 23, 2012, the Company made false or misleading statements in its public filings, or failed to disclose information, regarding the fact that the Company was violating the Foreign Corrupt Practices Act of 1992 ("FCPA") by paying millions of dollars in bribes to foreign officials in countries where it did business. (Compl. § 47). When the Company disclosed information about its potential liability under the FCPA, its stock price dropped, causing harm to shareholders. (Compl. ¶¶ 48, 49, 63, 64).

Specifically, the Complaint alleges two such "corrective" disclosures:

- "On September 22, 2014, General Cable disclosed that the Company was reviewing 'payment practices,' 'the use of agents,' and 'the manner in which the payments were reflected on our cooks and records' in connection with General Cable's operations in Portugal, Angola, Thailand, and India. General Cable advised investors that these issues 'may have implications under' the [FCPA]." (Compl. ¶ 5). On this news, the company's stock price dropped 4.68%. (Compl. ¶ 6).

*Sys., Inc.*, Nos. 3:11-cv-0433, 3:11-cv-0451, 3:11-cv-0601, 2011 WL 6202585, at *2 (M.D. Tenn. Nov. 28, 2011) (citation omitted).

- On February 10, 2016, post-market, General Cable reported
  that the Company had increased a previously disclosed
  disgorgement of profits related to bribe-tainted sales in
  Angola from $24 to $33 million, after identifying
  "certain other transactions that may raise concern."
  (Compl. ¶ 8).  On this news, the company's stock price
  dropped 31.61%.  (Compl. ¶ 9).

Plaintiffs filed this class action on January 5, 2017, in the
United States District Court for the Southern District of New York.
(Doc. 1).  It was transferred to this Court on February 27, 2017.
(Doc. 9).  The Complaint alleges a claim against General Cable for
violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)
and Rule 10(b)(5) promulgated thereunder, as well as a claim
against defendants Kenny and Robinson for violation of Section
20(a) of the Exchange Act ("control person" liability).  (Doc. 1).

### Analysis

The Private Securities Litigation Reform Act ("PSLRA"), 15
U.S.C. § 78u-4, governs the selection of a lead plaintiff in
private securities class actions.[3]

"The PSLRA provides a rebuttable presumption with regard to
the most adequate plaintiff." *Farrah v. Provectus
Biopharmaceuticals, Inc.*, 68 F. Supp.3d 800, 804 (E.D. Tenn. 2014).
This presumption is triggered where a potential lead plaintiff
has: (1) either filed the complaint or made a motion in response

---

[3] Certain timing and notice requirements of the PSLRA have been
satisfied and thus are not discussed herein.

to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

However, this presumption can be overcome by a showing that the presumptive lead plaintiff will be subject to unique defenses or is otherwise inadequate. 15 U.S.C. § 78u-4(a)(3)(iii)(II).

**A. Largest Financial Interest**

The PSLRA does not define the term "largest financial interest," and it does not appear that the Sixth Circuit has had occasion to discuss the lead counsel issue.

"Typically, courts have considered (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the [movant] during the class period; and (4) the amount of loss suffered by the movant." *Burgraff v. Green Bankshares, Inc.*, Nos. 2:10-CV-00253, 2:11-CV-00014, 2011 WL 613281, at *2 (E.D. Tenn. Feb. 11, 2011) (internal quotations and citations omitted).

"Most courts emphasize the fourth factor — the approximate loss suffered." *Ansfield v. Omnicare, Inc.*, Civil Action No. 11-173-DLB-CJS, 2012 WL 12924531, at *4 (E.D. Ky. Mar. 12, 2012) (citation omitted).

Here, it is not disputed that PREPA arguably suffered the largest financial loss during the Class Period: $114,271.86, as compared to the Long Trust's loss of $18,884.81.[4]

## B. Typicality, Adequacy, and Unique Defenses

Having determined that PREPA has the largest financial interest, the Court must determine if PREPA also meets the typicality and adequacy requirements of Fed. R. Civ. P. 23(a). See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc).

"The typicality requirement of Rule 23(a)(3) is fulfilled if the prospective lead plaintiff's claims arise out of the same course of conduct or series of events and are based on the same legal theory as the other members of the proposed class." *Ansfield*, 2012 WL 12924531, at *4 (citation omitted).

Here, PREPA's claims are typical of the class because it alleges losses resulting from General Cable's alleged misrepresentations and failure to disclose activities that violated the FCPA.

Nonetheless, PREPA cannot establish that it satisfies the adequacy requirement of Rule 23. A "plaintiff can establish the adequacy prong by demonstrating that its interests are not antagonistic to those of the class and *it is not subject to unique*

---

[4] These figures are calculated using the "last in, first out" ("LIFO") method. For purposes of these motions, it is not necessary to discuss alternate ways of calculating losses, because under any method, PREPA appears to have the largest loss.

*defenses that render it incapable of adequately representing the class.*" *Id.* (emphasis added).

During the Class Period, PREPA purchased 13,490 shares of General Cable stock at a cost of $422,542.86, but it sold 25,056 shares for $509,527.36, resulting in net sales of 11,560 shares and net gains of $86,984.50. (Doc. 19-5). PREPA was able to sell more shares than it bought during the Class Period because it held shares that were purchased before the Class Period. PREPA was thus a "net seller" and "net gainer" during the Class Period.

Courts regularly hold that plaintiffs who are net sellers and/or net gainers may be subject to unique defenses because they may have benefitted by selling pre-Class Period shares at allegedly inflated prices during the Class Period. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (noting that "courts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages, and that "proving damages and typicality will be the bête noir" of such plaintiffs); *In re Comdisco Sec. Litig.*, 150 F. Supp.2d 943, (N.D. Ill. 2001) (rejecting application for lead plaintiff by investor whose "sales at inflated prices caused it to derive unwitting benefits rather than true losses from alleged securities fraud").

The Court in *Perlmutter* explained this concept:

> Because Marcus sold more shares of Intuitive stock during the Class Period than he purchased, Marcus must have purchased some of the shares that he sold during the Class Period prior to the start of the Class Period.
>
> . . .
>
> The purposed of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud. . . . **Thus, when Marcus purchased Intuitive stock prior to the Class Period, he purchased it a fair market value. When he sold it during the Class Period, however, he sold it at fraudulently inflated prices. As a result, instead of being injured by the fraud on these sales, Marcus actually benefitted from the fraud.** . . . Therefore, Marcus' status as net seller and a net gainer during the Class Period weighs against Marcus' appointment as the lead plaintiff. Besides demonstrating that he potentially benefitted from Defendants' fraud, Marcus' status as a net seller and a net gainer also weighs against him because it may subject him to unique defenses if he were to be the class representative.

*Perlmutter*, 2011 WL 566814, at *9 (emphasis added).

Here, nearly half of the 25,056 shares that PREPA sold during the Class Period — 11,566 — were purchased at fair market value prior to the Class Period. PREPA's sale of those shares during the Class Period at allegedly fraudulently inflated prices makes PREPA exactly the type of net gainer held by the above authorities to be an inadequate lead plaintiff.

Secondly, PREPA also sold all of its General Cable stock by October 28, 2014, roughly sixteen months before the end of the Class Period and before the second alleged corrective disclosure. PREPA argues that this does not render it an atypical or inadequate

plaintiff because some of its sales occurred after the first of the two alleged partial corrective disclosures.

Courts, however, have rejected such an argument because a party like PREPA cannot show it was injured by disclosures that occurred after it divested itself of all of defendant's stock:

> It is undisputed that after the June 2010 Disclosure, and before the July 2012 Disclosure, Retirement Funds sold all of its Navistar stock. Thus, Retirement Finds has no interest in devoting resources to pursuing claims based upon the July 2012 Disclosure or the August 2012 Disclosure. Retirement Funds' primary interest will be to show that the June 2010 Disclosure was the main culprit in the corrective price drop in the market. Plaintiffs other than Retirement Funds will not have any great need to prove that the June 2010 Disclosure impacted the market and led to damages, and can focus on the more admissions alleged in the later disclosures. **Retirement Funds has no incentive to fairly and adequately protect the interests of the class as to the later disclosures.**

*Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 WL 3934243, at *5 (N.D. Ill. July 30, 2013) (emphasis added). The *Navistar* Court went on to note that the plaintiff in question could face a motion to dismiss for lack of standing as to the later disclosures, and that it would thus not be an appropriate lead plaintiff. *Id.*

This reasoning is especially applicable here. Although PREPA sold some of its stock after the September 22, 2014, corrective disclosure, that disclosure caused only a 4.68% drop in General Cable's stock price. (Compl. ¶ 6). In contrast, the disclosure of February 10, 2016 — long after PREPA had sold all its stock — caused a 31.61% drop in the stock price. (Compl. ¶ 9). Thus,

plaintiffs who still held stock on the later date — the closing date of the Class Period — were impacted far more greatly than those affected only by the first disclosure.

Therefore, because PREPA can show no loss causation as to the second, more harmful disclosure, it would be subject to a standing defense and would have no incentive to pursue the claims based on that subsequent disclosure.  For this reason as well, PREPA is not an appropriate lead plaintiff.

The Court will thus designate the Long Trust as the lead plaintiff in this matter.[5]

The PSLRA also provides that the lead plaintiff shall, subject to the approval of the Court, select and retain counsel to represent the class.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court must consider whether counsel are qualified, experienced, and generally able to conduct the litigation.  *See Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).

The Long Trust seeks the approval of the firm of Kessler Topaz Meltzer & Check, LLP as Lead Counsel and Mehr, Fairbanks & Peterson Trial Lawyers, PLLC as Liaison Counsel for the class, and it has submitted proof supporting these firms' qualifications and experience in handling securities and other complex litigation.

---

[5] In addition, given the above facts, PREPA has shown no reasonable basis for allowing discovery into the lead plaintiff question.

(Docs. 22-5, 22-6). PREPA has not challenged the qualifications of these firms.

Therefore, the Court will approve the appointment of these firms as Lead and Liaison Counsel for the Class.

Thus, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) PREPA's motion to Appoint Counsel (Doc. 19) be, and is hereby, **DENIED**;

(2) Satish Doshi's motion for appointment as lead counsel (Doc. 20) be, and is hereby, **DENIED AS MOOT**;

(3) The Long Trust's motion for appointment as lead counsel (Doc. 22) be, and is hereby, **GRANTED.** Kessler Topaz Meltzer & Check, LLP is hereby **APPOINTED** as Lead Counsel for the Class, and Mehr, Fairbanks & Peterson Trial Lawyers, PLLC is hereby **APPOINTED** as Liaison Counsel for the Class.

(4) PREPA's motion for leave to file a surreply (Doc. 51) be, and is hereby, **DENIED AS MOOT**; and

(5) **On or before November 20, 2017,** the parties shall confer to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the

disclosures required by Rule 26(a)(1), and to develop a proposed discovery plan. Such proposed plan shall be filed no later than **December 4, 2017**.

This 7th day of November, 2017.



**Signed By:**

***William O. Bertelsman***

**United States District Judge**